# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# ANDERSON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*ex rel.* [UNDER SEAL],<br><br>    Plaintiff,<br><br>  v.<br><br>[UNDER SEAL],<br><br>    Defendant. | **Civil Action No.** _____<br><br>**QUI TAM COMPLAINT**<br><br>**FILED IN CAMERA AND UNDER SEAL UNDER 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED**<br><br>**DO NOT PLACE ON PACER**<br><br>**DO NOT PLACE IN PRESS BOX** |

SHN\890345.1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel*. AIDAN FORSYTH,<br><br>            Plaintiff-Relator,<br>    v.<br><br>EUWE EUGEN WEXLER US PLASTICS INC.<br><br>            Defendant. | Civil Action No. _____<br><br>**QUI TAM COMPLAINT**<br><br>**FILED IN CAMERA AND UNDER SEAL UNDER 31 U.S.C. § 3730(b)(2)**<br><br>**JURY TRIAL DEMANDED** |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Aidan Forsyth ("Relator") files this *qui tam* action against Defendant EuWe Eugen Wexler US Plastics Inc. ("EW USA") and alleges as follows:

## INTRODUCTION

1.      This is an action to recover treble damages, civil penalties, and all other remedies on behalf of the United States of America in connection with Defendant's materially false and fraudulent applications to the Government for loans under the Small Business Administration's ("SBA") Paycheck Protection Program ("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.      Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendant submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan program.

1

## SUMMARY OF ALLEGATIONS

3. The Paycheck Protection Program (PPP) was established to provide small businesses with the resources necessary to maintain their payroll and cover related overhead during the COVID-19 crisis. The SBA provided guidance for the implementation of the PPP, including size eligibility requirements.

4. A business concern was "small" for the purpose of qualifying for a PPP loan depending on its size when compared to a size standard, which was typically stated in terms of either receipts or employees. The business's designated representative was required to certify that the business had no more than 500 employees or, if it did have more than 500 employees, that it had a tangible net worth and historic net income that would satisfy the SBA's alternative size standard.

5. The SBA specified that, for purposes of this headcount limit, foreign companies with U.S. entities and/or operations were required to report all employees of all affiliates, both foreign and domestic.

6. At all times relevant to this action, EW USA, along with its parent company EuWe Eugen Wexler Holding GmbH & Co. KG ("EW") and multiple sister companies in Europe and elsewhere, constituted a multinational plastics manufacturing company headquartered in Germany, with over 1,000 employees and over €110 million in consolidated revenues. EW USA had its principal place of business in Williamston, South Carolina.

7. Defendant, along with its parent, far exceeded the size and revenue limitations of businesses eligible to participate in SBA programs, including the PPP loan program. Nor did Defendant qualify under any SBA exceptions. Accordingly, Defendant was not eligible to receive second-draw PPP loans or forgiveness thereof.

SHN\890345.1

8. Nonetheless, from in or about January through March 2021, Defendant applied to a New York City lender for a second-draw PPP loan.

9. Upon information and belief, a representative of the Defendant prepared or caused to be prepared the loan application as its designated authorized representative.

10. The application required the borrower's designated representative to certify that the Defendant was an eligible business under SBA rules. The application also required the representative to acknowledge that the information submitted was material to the Government, to certify that it was true and correct, and to acknowledge that submitting a materially false application would violate federal law.

11. Upon information and relief, in Defendant's application, the representative falsely and fraudulently certified that the borrower was an eligible "small business concern" under SBA rules. The representative also was required to expressly acknowledge that this was a material question and that submitting a materially false application would violate federal law.

12. In reliance on these materially false statements and certifications, the lender extended Defendant a second-draw loan in the amount of $1,627,947.00.

13. By submitting applications with additional material false and fraudulent statements and certifications, Defendant later sought and obtained forgiveness of the entirety of this loans, along with fees and accrued interest.

14. Relator files this *qui tam* lawsuit to enable the Government to recover from Defendant the SBA-guaranteed monies that were provided to Defendant as the result of its wrongdoing, and bank fees and costs paid by the Government. Relator further seeks to recover treble damages and/or penalties as provided by the FCA.

**JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS**

15. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

16. In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732.  This Court has personal jurisdiction over the Defendant pursuant to 31 U.S.C. § 3732(a) because the Defendant did business and submitted its PPP Loan application and/or request for loan forgiveness to a lender in this District.

17. Venue is proper in this District under 31 U.S.C. § 3732(a) because Defendant transacted business in this District and because the wrongdoing alleged herein took place within this and/or affected this District.

18. In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has been filed *in camera* and will remain under seal for a period of at least 60 days, and shall not be served on the Defendant until the Court so orders.

19. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in his possession contemporaneous with the filing of the Complaint.  Relator has complied with this provision by serving copies of the Complaint and such disclosure upon Adair F. Boroughs, United States Attorney for the District of South Carolina, and upon the Honorable Pamela J. Bondi, Attorney General of the United States.

20. Relator is not aware that the allegations in this Complaint have been publicly disclosed.  In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the

Relator is an "original source" since he has voluntarily provided his information to Government before filing this Complaint, and has knowledge, which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES/AFFILIATES

21. At all times relevant to this action, Plaintiff/Relator Aidan Forsyth resided at 55 West 8th Street, New York, NY 10011.

22. At all times relevant to this action, Defendant EuWe Eugen Wexler US Plastics Inc. ("EW USA") was a corporation registered to do business in the State of South Carolina. Its principal place of business was located at 171 Alliance Pkwy, Williamston, SC 29697.

23. At all times relevant to this action, non-Defendant EuWe Eugen Wexler Holding GmbH & Co. KG ("EW") was a limited partnership that was formed in Germany on or about March 11, 1980. Its principal place of business was located at: L Industriestr. 28 91207, Lauf a.d.Pegnitz, Bayern Germany.

24. Defendant EW USA was a subsidiary of EW. EW owned several other subsidiaries in Europe and elsewhere.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT
### The False Claims Act

25. Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

26. The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or

5

"knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $13,946.00 and up to $27,894.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024).

27.  The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

28.  The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

29.     The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

30.     In this action, and under well-established precedent, the false and fraudulent nature of Defendant's conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

## The CARES Act Authorizes Paycheck Protection Program Loans

31.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

32.     Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

7

33. Under the PPP, eligible businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

34. The SBA used size standards to determine if a business was a "small business concern" and therefore eligible to apply for an SBA-guaranteed PPP loan. To be deemed eligible, a business had to have fewer than 500 employees or meet the SBA industry size standard, if more than 500. The Small Business Jobs Act of 2010, Section 1116 established an alternative size standard of not more than $15 million in tangible net worth and of not more than $5 million in the average net income after federal income taxes (excluding any carry-over losses) of the applicant for the two full fiscal years before the date of the application.

35. The SBA also considered whether a business had "affiliates" subject to mutual equity/stock ownership, overlapping management and/or control. *See id*. Subpart A, § 121.103. Businesses which are "affiliates" of each other under the SBA's definitions "may be treated as one party with such interests aggregated," including aggregating the businesses' annual receipts and number of employees. *See id*. §§ 121.103, 121.104 & 121.106. For purposes of the size standard, the size of the applicant combined with its affiliates must not exceed the size standard designated for either the primary industry of the applicant alone or the primary industry of the applicant and its affiliates, whichever is higher. 13 C.F.R. §121.301.

36. Early in the Paycheck Protection Program, the SBA clarified that businesses comprising both U.S. and foreign entities "must count all of its employees and the employees of its U.S. and foreign affiliates absent a waiver of or an exception to the affiliation rules. 13 C.F.R. 121.301(f)(6)." Paycheck Protection Program FAQs (updated May 5, 2020). *See also* 85 Fed. Reg.

30835, 30846 (May 21, 2020) ("SBA's affiliation rules provide that in determining an entity's number of employees, employees of the entity 'and all of its domestic and foreign affiliates' are included.  As a result, in most cases, a borrower is considered together with its U.S. and foreign affiliates for purposes of determining eligibility for the PPP.")

37.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans.  To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

38.     Specifically with regard to these eligibility criteria, the loan application asked, "Is the Applicant or any owner[1] of the Applicant an owner of any other business, or have common management with, any other business?" If the answer was yes, the applicant was required to "list all such businesses and describe the relationship on a separate sheet[.]"

39.     In December 2020, the Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act (the Economic Aid Act) was enacted, authorizing the SBA to guarantee "Paycheck Protection Program Second Draw Loans . . . under generally the same terms and conditions available under the Paycheck Protection Program[.]" *See* 86 Fed. Reg. 3712-3723 (Jan. 14, 2021).

40.     The second-draw PPP loan application (SBA Form 2483-SD) required the borrower's authorized representative to state the total number of employees "(including affiliates, if applicable; may not exceed 300 unless 'per location' exception applies)," and to indicate if "the Applicant or any owner of the Applicant an owner of any other business, or have common

---

[1] Defined by the SBA as an individual with a 20% or greater equity interest in the business.

9

management with, any other business" and if so, to "list all such businesses and describe the relationship on a separate sheet[.]"

41.  The borrower's authorized representative was required to certify, among other things, that:

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) and the Department of the Treasury (Treasury) implementing Second Draw Paycheck Protection Program Loans under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) and the Economic Aid to Hard-Hit Small Businesses, Nonprofits and Venues Act (the Paycheck Protection Program Rules).

- The Applicant, together with its affiliates (if applicable), (1) is an independent contractor, self-employed individual, or sole proprietor with no employees or (2) employs no more than 300 employees; or (3) if NAICS 72, employs no more than 300 employees per physical location; (4) if a news organization that is majority owned or controlled by a NAICS code 511110 or 5151 business or a nonprofit public broadcasting entity with a trade or business under NAICS code 511110 or 5151, employs no more than 300 employees per location.
  * * *

- All loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rules including the prohibition on using loan proceeds for lobbying activities and expenditures. . . .

42.  Besides the total number of employees, the borrower's authorized representative was also required to certify, among other things, the business's average monthly payroll expenses. This information was used to calculate the amount of money the business was eligible to be loaned.

SHN\890345.1

The applicant was also required to submit documentation showing payroll expenses, among other things.

43. The applicant's authorized representative was finally required to acknowledge and certify in good faith by initialing the following certification:

> [T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

44. PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

45. Once a borrower submitted its PPP loan application to a lender, the participating lender processed the PPP loan application. If a PPP loan application was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

46. A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The SBA made clear that "[u]nder no circumstances may PPP funds be used to support non-U.S. workers or operations." 85 Fed. Reg. at 30837.

47. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses.

## SPECIFIC FRAUD ALLEGATIONS

### Defendant and its Parent and Affiliates in the Aggregate Were Too Large to be Eligible for a Second-Draw PPP Loan

48. In the aggregate, Defendant, its Parent and affiliates employed far too large a headcount to be eligible to receive a second-draw PPP loan.

49. Defendant EW USA reported to the IRS that at the end of 2020, 123 active participants participated in its employee benefit plan.

50. Defendant EW USA's parent company, EW, reported in its Consolidated Financial Statements for the Financial Year from January 1, 2020 to December 31, 2020 that "an average of 1,038 employees were employed."

51. EW USA reported to the IRS that at the end of 2021, 136 active participants participated in its employee benefit plan.

52. EW reported in its Consolidated Financial Statements for the Financial Year from January 1, 2021 to December 31, 2021 that "an average of 1,016 employees were employed."

SHN\890345.1

### **Despite being Ineligible under SBA Regulations, Defendant Applied for and Received A Second-Draw PPP Loan, Which was Later Forgiven**

53.     In or about May 2021, EW USA was approved for a second-draw PPP Loan in the amount of $1,627,947.00, based on a reported headcount of 166 employees.

54.     Upon information and belief, in or about May 2021, an authorized representative of the Defendant prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that Defendant was a small business concern eligible for participation in the PPP Loan Program, by failing to disclose its total number of employees, and failing to acknowledge that it had numerous foreign and domestic affiliates, by omitting information concerning those companies' common ownership.

55.     Upon information and belief, the representative falsely and fraudulently indicated 166 as the "Number of Employees (including affiliates, if applicable; may not exceed 300 unless 'per location' exception applies)".

56.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question: "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information. Specifically, the representative falsely and fraudulently omitted that Defendant's foreign and domestic affiliated entities were affiliated businesses that shared common ownership.

57.     Upon information and belief, the representative further falsely and fraudulently certified that Defendant "together with its affiliates (if applicable) . . . employ[ed] no more than 300 employees[.]"

58.     Upon information and belief, the authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting

13

documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

59. The representative prepared SBA Form 2483-SD using NAICS Code 326199 which did not provide for a "per-location" exception to the employee headcount limit.

60. The authorized representative executed, dated, and submitted the Form 2483-SD to Itria Ventures LLC ("Itria") based in New York, NY. Itria is a subsidiary of Biz2Credit which is an SBA participating lender.

61. On or about May 18, 2021, in reliance on EW USA's materially false and fraudulent representations and certifications in the loan application, Itria issued PPP loan #2797059007 in the amount of $1,627,947.00 (the "EW USA Loan"). The SBA also paid Itria a lender fee of $48,838.41.

62. Upon information and belief, an authorized representative for the Defendant prepared or caused to be prepared the PPP Loan Forgiveness Application Form, which contained a false and fraudulent certification that the Defendant had complied with the SBA's PPP loan requirements and was therefore entitled to forgiveness of the loans.

63. On or about November 9, 2021, the EW USA Loan was forgiven in the amount of $1,638,754.76, causing the United States to reimburse Itria for that amount (including interest), which (including the lender fee) cost the Government more than $1.2 million.

### THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANT'S CONDUCT

64. Upon information and belief, the Defendant's loan (including accrued interest) were forgiven in full. These reimbursements, plus lender fees and costs cost the Government at

least $1.67 million. Accordingly, Defendant's materially false statements have caused the Federal Government to be defrauded of taxpayer funds in the approximate amount of $1.67 million.

**CLAIMS FOR RELIEF**

**COUNT I**
**False Claims Act:**
**Presenting or Causing to Be Presented False and Fraudulent Claims**
**31 U.S.C. § 3729(a)(1)(A)**

65. Relator repeats, realleges, and incorporates paragraphs 1 through 64 of the Complaint as though fully set forth herein.

66. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant has knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

67. As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

**COUNT II**
**False Claims Act:**
**Making or Using False**
**Records or Statements to Cause Claims to be Paid**
**31 U.S.C. § 3729(a)(1)(B)**

68. Relator repeats, realleges, and incorporates paragraphs 1 through 64 of the Complaint as though fully set forth herein.

69. As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, the Defendant has knowingly made, used, or caused to be made or used, false

records or statements – *i.e.*, the false representations made or caused to be made by Defendant – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

70.     As a result thereof, the United States has been damaged in an amount equal to or greater than the amount paid by the United States for such false or fraudulent claims.

## DEMANDS FOR RELIEF

**WHEREFORE**, Relator, on behalf of the United States Government, demands judgment against Defendant, ordering:

A.     That Defendant be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B.     That judgment be entered in Relator's favor and against Defendant in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $13,946.00 and up to $27,894.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Feb. 12, 2024), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendant, together with penalties for specific claims to be identified at trial after full discovery;

C.     That Defendant be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.     That judgment be granted for Relator against Defendant for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.     That Relator be granted such other and further relief as the Court deems just and proper.

**TRIAL BY JURY**

Relator hereby demands a trial by jury as to all issues.

        ELLIS HINTON, LLC

        *s/Sloan P. Ellis*

        _____

        Sloan P. Ellis (Bar No. 10436)
        Brandi B. Hinton (Bar No. 13186)
        21 Augusta Street, Suite C
        Greenville, SC 29601
        (864) 775-5775
        sloan@ellishinton.com
        brandi@ellishinton.com

        SPIRO HARRISON & NELSON
        Eric H. Jaso (*pro hac vice* admission pending)
        363 Bloomfield Avenue
        Suite 2C
        Montclair, New Jersey 07042
        (973) 744-2100
        ejaso@shnlegal.com

        *Attorneys for Plaintiff-Relator*

February 14, 2025
Greenville, South Carolina